UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ROBERT OSBORN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-cv-04023-SLD-JEH |
| | ) |
| REGIONS COMMERCIAL ROOFING, INC., | ) |
| | ) |
| Defendant. | ) |

ORDER

Before the Court is Plaintiff Robert Osborn's Supplement to Plaintiff's Motion for Default Judgment with Memorandum of Law in Support of Motion for Default Judgment ("Supplemental Motion for Default Judgment"), ECF No. 43. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND[1]**

Osborn was a sales representative in the business of procuring roofing contracts on behalf of roofing companies. In his prior dealings, he was compensated via commission payments as an independent contractor. On or about March 1, 2021, Regions Commercial Roofing, Inc. ("Regions") contracted with Osborn to procure roofing contracts in the Quad Cities area, including Rock Island County, Illinois. Under their contract, Osborn was supposed to receive a commission for each roofing job that he procured on Regions' behalf once the job was completed in the form of an even split of the job's net profits. Despite Osborn's demands,

---

[1] The Court recites the facts as alleged in Osborn's Complaint, Not. Removal Ex. 1, ECF No. 1-1, because default has been entered against Regions Commercial Roofing, Inc. and the pending motion concerns the entry of a default judgment, *see* Mar. 19, 2024 Entry of Default; *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) ("Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.").

1

Regions has refused to pay certain commissions which it owes Osborn. He asserts that Regions owes him $31,749.33. *See* Suppl. Mot. Default J. ¶ 3 (acknowledging an arithmetical error in the Complaint's allegation that Plaintiff was owed $31,749.78).

Osborn sued Regions in state court on October 6, 2021. *See generally* Compl., Not. Removal Ex. 1, ECF No. 1-1. Osborn asserted two counts: (1) Count I for violation of Illinois's Sales Representative Act ("SRA"), 820 ILCS 120/0.01–3; and (2) Count II for breach of contract. Regions removed the case to this Court on November 29, 2021, invoking the Court's diversity jurisdiction. Not. Removal 1, ECF No. 1 (citing 28 U.S.C. §§ 1332, 1441, 1446). Regions moved to dismiss Count I, arguing that Osborn had failed to plead all the required elements to maintain a cause of action under the SRA. Mot. Dismiss ¶ 2, ECF No. 4. This Court agreed and dismissed Count I, giving Osborn leave to amend. *See* Apr. 25, 2022 Order 4, ECF No. 11. Osborn did not file an amended complaint. Regions then amended its answer and asserted counterclaims for tortious interference with prospective economic advantage and defamation by libel. *See* Am. Answer & Countercls. 5–6, ECF No. 17.

After Osborn changed counsel once, *see* Aug. 30, 2022 Min. Entry (Hawley, M.J.), and Regions changed counsel twice, *see* Nov. 3, 2022 Text Order (Hawley, M.J.); Jan. 20, 2023 Min. Entry (Hawley, M.J.); Not. Appearance Counsel, ECF No. 31, the parties reached an agreement at a settlement conference, *see* Nov. 30, 2023 Min. Entry (Hawley, M.J.). However, Regions' counsel subsequently moved to withdraw, Mot. Withdraw 1, ECF No. 35, and Osborn responded to that motion, asserting that Regions had failed to make certain payments in violation of the parties' written agreement which Regions had still not signed, Resp. Mot. Withdraw ¶¶ 6–10, ECF No. 37. Regions defied the Court's direction that a corporate representative for Regions appear at the hearing which the Court held regarding its counsel's motion to withdraw. Feb. 16,

2024 Min. Entry (Hawley, M.J.). In response to an order to show cause, Eric Gonzalez, on behalf of Regions, apologized for failing to appear and stated that he was "fully committed to complying with all court directives moving forward." Resp. Order Show Cause, ECF No. 39. Despite this assurance, no one from Regions appeared at the subsequent hearing held regarding Regions' counsel's motion to withdraw. Mar. 19, 2024 Min. Entry (Hawley, M.J.). Regions' counsel was permitted to withdraw, *id.*, and default was entered against Regions the same day, Mar. 19, 2024 Entry of Default. Regions' counterclaims were dismissed with prejudice for failure to obtain new counsel and failure to prosecute. First Apr. 19, 2024 Text Order. The Court denied Osborn's first motion for a default judgment because he failed to adequately support his requested relief. Second Apr. 19, 2024 Text Order. The pending motion was filed shortly thereafter.

## DISCUSSION

### I. Legal Standard

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Yet the entry of default judgment is not automatic, as the movant must demonstrate that it is entitled to judgment as a matter of law. *Cass Cnty. Music Co. v. Muedini*, 55 F.3d 263, 265 (7th Cir. 1995). Further, a default does not establish the veracity of allegations relating to damages. *Dundee Cement*, 722 F.2d at 1323. District courts enjoy "broad latitude in quantifying damages, especially when the defendant's own conduct impedes quantification . . . [—e]ven speculation has its place in estimating damages." *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014) (alterations in original) (quotation marks omitted). A hearing on damages should be held unless "the amount claimed is liquidated or capable of ascertainment from definite figures

3

contained in the documentary evidence or in detailed affidavits." *Dundee Cement*, 722 F.2d at 1323.

II. Analysis

    A. Entitlement to Judgment

Osborn asserts that Regions breached its oral contract with him. Compl. ¶¶ 1–7, 11–13. Because this case invokes the Court's diversity jurisdiction and neither party has raised a choice-of-law issue, the Court applies the substantive law of Illinois to this claim. *See Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 266 (7th Cir. 2016), *as amended* (Jan. 25, 2017). To maintain a claim for breach of contract, "the plaintiff must establish an offer and acceptance, consideration, definite and certain terms of the contract, [the] plaintiff's performance of all required contractual conditions, the defendant's breach of the terms of the contract, and damages resulting from the breach." *Mannion v. Stallings & Co.*, 561 N.E.2d 1134, 1138 (Ill. App. Ct. 1990). "For an oral contract to exist, the parties must have a meeting of the minds with respect to the terms of the agreement and must intend to be bound by the agreement." *Williams v. Off. of Chief Judge*, 839 F.3d 617, 623 (7th Cir. 2016) (applying Illinois contract law). "Illinois courts have found that [t]he essential terms of a sales representative [agreement] include the commission structure, the territory, the services to be performed, the duration of the agreement and/or a termination provision." *Thompson Corrugated Sys., Inc. v. Engico, S.R.L.*, 111 F.4th 747, 752 (7th Cir. 2024) (alterations in original) (quotation marks omitted); *see also O'Neil & Santa Claus, Ltd. v. Xtra Value Imports, Inc.*, 365 N.E.2d 316, 318 (Ill. App. Ct. 1977). "The existence of an oral contract, its terms, and the intent of the parties are questions of fact . . . ." *Anderson v. Kohler*, 922 N.E.2d 8, 18 (Ill. App. Ct. 2009).

4

The elements for Osborn's claim for breach of contract are readily established by virtue of Regions' default. On or about March 1, 2021, the parties agreed that Osborn would procure roofing contracts for Regions and that in return Regions would pay him a commission based upon the net profits of the jobs which were completed pursuant to those contracts, Compl. ¶¶ 3–4, thereby satisfying the elements of offer, acceptance, and consideration, *see Mannion*, 561 N.E.2d at 1138. Osborn performed his obligations under the contract by procuring those roofing contracts, Regions breached the contract by failing to pay the promised commissions, and he suffered damages in the form of unpaid commissions because of that breach, Compl. ¶¶ 5–7, 9, thereby satisfying the elements of performance, breach, and damages, *see Mannion*, 561 N.E.2d at 1138.

Regarding definite and certain terms, the parties agreed that Osborn was responsible for a territory that covered the Quad Cities and that the services which he would perform would be procuring roofing contracts on Regions' behalf. Compl. ¶ 3. The only arguably missing term from the oral contract is "the duration of the agreement and/or a termination provision," *see Thompson Corrugated Sys.*, 111 F.4th at 752 (quotation marks omitted), but "in Illinois, contracts of indefinite duration are presumptively terminable 'at the will of the parties,'" *id.* (quoting *Jespersen v. Minn. Mining & Mfg. Co.*, 700 N.E.2d 1014, 1015 (Ill. 1998)). "Where state law provides the default rule, a contract term is not unenforceable for indefiniteness." *Id.* at 752–53 (citing *Bruzas v. Richardson*, 945 N.E.2d 1208, 1215 (Ill. App. Ct. 2011)). Illinois's default rule supplies the duration term, such that Osborn has sufficiently alleged that his sales-representative contract had definite and certain terms, *see id.* at 752, for which there was a meeting of the minds and an intent to be bound, *see Williams*, 839 F.3d at 623. As "[t]he existence of [the] oral contract, its terms, and the intent of the parties are questions of fact" and

5

default was entered against Regions, the Court finds that Osborn has established his entitlement to a judgment for breach of contract. *See Anderson*, 922 N.E.2d at 18.

### B. Requested Relief

#### 1. Damages

The Court turns to whether Osborn has shown that his damages are "liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Dundee Cement*, 722 F.2d at 1323. He alleges that he was entitled to commissions in the form of an even split of net profits, which was not paid—either in whole or in part—on sixteen contracts:

| Job No. | Contract Amount | Commission Earned | Commission Paid | Net Profit Rate[2] |
|---|---|---|---|---|
| 1 | $10,581.18 | $1,244.69 | $409.50 | 23.53% |
| 2 | $15,983.97 | $2,022.33 | $0.00 | 25.30% |
| 3 | $9,974.00 | $1,174.17 | $349.30 | 23.54% |
| 4 | $29,033.19 | $4,048.63 | $0.00 | 27.89% |
| 5 | $37,234.67 | $8,635.92 | $0.00 | 46.39% |
| 6 | $25,953.39 | $887.70 | $0.00 | 6.84% |
| 7 | $6,913.43 | $351.60 | $1,838.00 | 10.17% |
| 8 | $13,317.48 | $1,953.86 | $650.29 | 29.34% |
| 9 | $19,430.65 | $2,826.10 | $971.53 | 29.09% |
| 10 | $21,147.22 | $4,203.10 | $1,017.68 | 39.75% |
| 11 | $6,029.35 | $494.82 | $0.00 | 16.41% |
| 12 | $11,490.53 | $1,723.58[3] | $0.00 | 30.00% |
| 13 | $14,951.48 | $1,419.60 | $0.00 | 18.99% |
| 14 | $14,500.00 | $658.61 | $0.00 | 9.08% |
| 15 | $16,851.62 | $1,597.76 | $0.00 | 18.96% |
| 16 | $52,503.38 | $10,838.16 | $1,003.85 | 41.29% |
| **TOTALS** | **$305,895.54** | **$44,080.63** | **$6,240.15** | **24.79%** |

---

[2] Osborn did not allege a net profit rate for each contract, instead asserting that his commissions were equivalent to "approximately 15% of the gross" contract amount. *See* Compl. ¶¶ 4–5. The Court calculated the figures in this column by multiplying the commissions earned by two, dividing that figure by the contract amount, and multiplying the resulting figure by 100 to make it a percentage. The Court finds that the average commission requested by Osborn—half of the net profits—is closer to 12.5% of the gross contract amount.

[3] Osborn clarifies that this figure is an estimate. *See* Compl. ¶ 5.

*See* Compl. ¶¶ 4–5; Corrected Commission Table, Osborn Aff. Ex. A, ECF No 43 at 10.[4]  The above table demonstrates that Regions has not paid $37,840.48 in commissions which it owes to Osborn.  However, when accounting for a direct payment of $6,091.15 that Osborn received for the first job, he alleges that he is owed a total of $31,749.33.  *See* Compl. ¶ 6; Corrected Commission Table.  Osborn has provided an affidavit stating that the table contains an accurate reflection of commissions he is owed.  Osborn Aff. ¶¶ 6–9, Suppl. Mot. Default J. Ex. 1, ECF No. 43 at 7–9.  As further documentary evidence is in the control of Regions—a party that has demonstrated its willingness to ignore court orders and to delay this case, *see* Mar. 19, 2024 Min. Entry (Hawley, M.J.)—the Court exercises its "broad latitude in quantifying damages" to find that Regions' conduct has impeded more precise quantification, that no evidentiary hearing is necessary, and that Osborn has demonstrated that he is entitled to damages in the amount of $31,749.33, *see Domanus*, 742 F.3d at 303.

### 2. Attorney's Fees

The next element of relief which Osborn seeks is his attorney's fees.  *See* Compl. ¶¶ 12–13.  "Illinois generally recognizes the American Rule that, absent a statute or contractual provision, a successful litigant must bear the burden of his or her own attorney's fees." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) (quotation marks omitted).  In both his Complaint and his Supplemental Motion for Default Judgment, Osborn suggests that Regions' wrongful conduct forced him to "engage the services of counsel to pursue his commissions."  Suppl. Mot. Default J. 5; Compl. ¶ 11.  But under Illinois common law, any

---

[4] The Supplemental Motion for Default Judgment and its exhibits were filed as one continuous, unpaginated document in ECF No. 43.  *See generally* Suppl. Mot. Default J.; Osborn Aff., Suppl. Mot. Default J. Ex. 1, ECF No. 43 at 7–9; Corrected Commission Table; Aff. Att'y's Fees, Suppl. Mot. Default J. Ex. 2, ECF No. 43 at 11–12; Time Entries, Aff. Att'y's Fees Ex. A, ECF No. 43 at 13–15.  The Court's citations to pages of these documents use the page numbers affixed to each page by CM/ECF when viewing the entirety of ECF No. 43.

wrongful conduct is immaterial—absent a contractual provision or applicable statute, attorney's fees are not a recoverable form of relief for breach of contract. *See Ritter v. Ritter*, 46 N.E.2d 41, 45 (Ill. 1943) ("The cases all confirm the rule that attorneys fees and expenses of litigation can not be recovered in a subsequent suit as damages by a successful plaintiff who has been forced into litigation by reason of the defendant's wrongful conduct.")

Seeking to circumvent the American Rule, Osborn "respectfully submits" that the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1–15 "should also be applicable to the issues at hand." Suppl. Mot. Default J. 3–5. For many reasons, the Court declines to apply the IWPCA. First, Osborn originally sought relief under the SRA, which explicitly excludes from its protection a person "who qualifies as an employee of the principal pursuant to the [IWPCA]." 820 ILCS 120/1(4). Further, his claim for breach of contract incorporates the allegation that he was "in the business of procuring roofing contracts on behalf of roofing companies for which he receive[d] a commission as an independent contractor." *See* Compl. ¶¶ 1, 12. The IWPCA only applies to employees, not independent contractors. *See* 820 ILCS 115/2 (defining employee); *O'Malley v. Udo*, 198 N.E.3d 323, 334–36 (Ill. App. Ct. 2022) (explaining that an independent contractor is not considered an employee). He requests that the Court ignore his Complaint's allegation regarding his prior status as an independent contractor, arguing that "he was not so engaged by Regions." Suppl. Mot. Default J. 3–4.

Even if the Court could overlook this inconsistency, Osborn's request for application of the IWCPA suffers from a more fundamental flaw—his Complaint simply did not allege that Regions was liable under the IWCPA. "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action *alleged in the complaint*." *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) (emphasis added) (quotation marks omitted). Osborn

8

was "the master of the complaint." *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (quotation marks omitted). If he wanted attorney's fees via the IWCPA instead of the SRA, he could have sought to amend his complaint after the Court dismissed his SRA claim. He did not seek that amendment. Osborn does not allege a cause of action under the IWPCA, and therefore the entry of a default judgment on his Complaint against Regions does not entitle him to the relief that could have been available under that statute. *See Wehrs*, 688 F.3d at 892. The Court finds that Osborn has not shown that he is entitled to recover his attorney's fees as part of his default judgment.

### 3. Costs

The final element of relief sought by Osborn are his costs.[5] Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party." He asserts that he has incurred "costs of $410 (filing and service fees)." Osborn Aff. ¶ 10. Filing and service fees are recoverable as costs. *See* 28 U.S.C. § 1920; *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996). "Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). Regarding service fees, a party is permitted "recovery of expenses that do not exceed what the marshal would have charged." *Collins*, 96 F.3d at 1060. Calculating what the United States Marshals Service ("USMS") would have charged requires information about either the time spent or distance traveled to effectuate service—without such information, a court may default to "award[ing] only the minimum amount that the USMS would have charged—one hour

---

[5] Osborn also requests that the Court grant him post-judgment interest, Suppl. Mot. Default J. 5, but he is automatically entitled to such interest, *see, e.g.*, 28 U.S.C. § 1961(a); *Miller v. Artistic Cleaners*, 153 F.3d 781, 785 (7th Cir. 1998).

at the statutory rate." *Hillmann v. City of Chicago*, No. 04 C 6671, 2017 WL 3521098, at *9 (N.D. Ill. Aug. 16, 2017); *see also Vesey v. Envoy Air, Inc.*, No. 4:18-cv-04124-SLD-JEH, 2020 WL 13682563, at *2 (C.D. Ill. Apr. 30, 2020), *aff'd*, 999 F.3d 456 (7th Cir. 2021). The USMS currently charges an hourly rate of $65.00 for personal service of process as well as travel costs and other out-of-pocket expenses. *See* 28 C.F.R § 0.114(a)(3).

Osborn's Complaint was filed in the Circuit Court of the Fourteenth Judicial Circuit in Rock Island County, Illinois in 2021. *See generally* Compl. The Court takes judicial notice that Osborn paid $335 in fees in state court. *See Osborn v. Regions Commercial Roofings, Inc*, 2021L103, Rock Island County, Illinois, https://www.judici.com/courts/cases/case_fines_fees.jsp?court=IL081025J&ocl=IL081025J,2021L103,IL081025JL2021L103P1 (last visited Oct. 16, 2024). Osborn served his Complaint upon Regions via the Sangamon County Sheriffs Office, but he does not detail how far the Sangamon County Sheriffs Office had to travel to serve his Complaint, nor how long this task took. *See* Certification Service, ECF No. 1-1 at 5. The Court takes judicial notice that the Sangamon County Sheriffs Office charges "a flat fee of $50.00 each for service of civil papers." *See Support Services*, Sangamon County Sheriff Illinois, https://www.sangamoncounty-sheriff.com/divisions/support-services/ (last visited Oct. 16, 2024). This flat fee of $50 does not exceed the statutory minimum of what the USMS would have charged for serving his Complaint, such that the Court finds that Osborn is entitled to an award of $50 for his service fees. *See* 28 C.F.R § 0.114(a)(3); *Collins*, 96 F.3d at 1060. In total, the Court finds that Osborn is entitled to recover $385 in costs.

## CONCLUSION

Accordingly, Plaintiff Robert Osborn's Supplement to Plaintiff's Motion for Default Judgment with Memorandum of Law in Support of Motion for Default Judgment, ECF No. 43, is GRANTED IN PART and DENIED IN PART. Osborn is awarded $31,749.33 in damages and $385 in costs, for a total award of $32,134.33. The Clerk is directed to enter judgment and close the case.

Entered this 16th day of October, 2024.

s/ Sara Darrow  
SARA DARROW  
CHIEF UNITED STATES DISTRICT JUDGE